UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

GLENN R. HERNANDEZ   CIVIL ACTION NO. 6:13-CV-02155

VERSUS        JUDGE HAIK

WARDEN, LOUISIANA    MAGISTRATE JUDGE HANNA
STATE PENITENTIARY

## REPORT  AND  RECOMMENDATION

  Glenn R. Hernandez is an inmate in the custody of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, serving a life sentence imposed following his 2008 conviction in the 15th Judicial District Court, Lafayette Parish, Louisiana, on one count of aggravated rape.  He filed the instant petition for writ of *habeas corpus* on June 27, 2013, pursuant to 28 U.S.C. § 2254, seeking reversal of his conviction and vacation of his sentence.

  This matter was referred to the undersigned for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  For the following reasons, it is recommended that the petition be DISMISSED WITH PREJUDICE.

## Background Facts

P.B.[1] was born in 1962.  When she was approximately four years old, her aunt (her mother's half-sister) married Mr. Hernandez.  Mr. Hernandez was on active duty in the United States Navy from May 1965 until September 1968.  He was then on inactive duty, without being called up, from 1968 to 1972.

When his tour of active duty ended, Mr. Hernandez returned home to Lafayette, Louisiana, and worked construction for a family member.  He and his wife rented a house in Broussard, Louisiana, and their daughter Terry was born in July 1968.  Mr. and Mrs. Hernandez then moved into Mr. Hernandez's grandmother's home on La Neuville Road while they built a house on Bonin Road.  Their son Jason was born in 1972, and the family continued to reside in their house on Bonin Road through the trial of this matter in 2008.

After working construction for a few years, Mr. Hernandez went to work for United Gas Pipeline Company.  He worked for United Gas for twenty-eight years, doing pipeline maintenance work.  He eventually retired after injuries sustained in an automobile accident made it difficult for him to perform his job duties.

---

[1]        Although P.B. is married and used a last name that did not start with the letter "B" at trial, she is consistently referred to in the briefing and earlier rulings as P.B.  To avoid confusion, she is referred to in the same manner here.

It is undisputed that, between 1968, when Mr. and Mrs. Hernandez set up housekeeping in their first home, until approximately 1972 or 1973, when P.B. was ten or eleven years old, P.B. often spent the night at Mr. and Mrs. Hernandez's home. P.B. testified that, on numerous such occasions, Mr. Hernandez came into the room where she was sleeping, woke her up and made her walk around holding his hand, rubbed his genitals on her (both outside and inside her clothing), touched her genitals with his fingers, masturbated on her, and inserted his fingers and the tip of his penis into her vagina. She testified that she knew it was dirty but he intimidated her and told her not to tell. She stated that this activity occurred at all three of the houses where the Hernandez family lived, sometimes with Mr. and Mrs. Hernandez's daughter Terry in a crib in the same room or sleeping in the same bed with P.B. P.B. referred to her uncle as "the monster in the night."[2]  She testified that the activity stopped when she was approximately ten or eleven years old because she stopped going to the Hernandez home.

P.B. testified that she told her mother about these events when she was approximately fifteen or sixteen years old. Her mother testified that, when P.B. confided in her, she went to a law enforcement agency but was told that nothing could be done because the offenses had occurred so long ago. P.B. also testified that, at

---

[2]        Rec. Doc. 16-3 at 18.

about the same time that she confided in her mother, she confronted Mrs. Hernandez about this, but Mrs. Hernandez called her a liar.  At trial, Mrs. Hernandez denied that P.B. ever told her that Mr. Hernandez had acted inappropriately with her.

P.B.'s two first cousins, sisters C.H.[3] and D.H., also testified at the trial about being molested by their uncle when they were children.  C.H. told her parents about this in 1993 and they contacted the Lafayette Parish Sheriff's Department.  However, they did not pursue charges against Mr. Hernandez at that time.

All three women came forward and pressed charges against Mr. Hernandez in 2006.  Mr. Hernandez was tried only with regard to the charges concerning P.B. He testified at trial and denied the charges.  A more detailed factual summary can be found in *State of Louisiana v. G.R.H.*, 2008-1549 (La. App. 3 Cir. 06/03/09), 2009 WL 1545606.

## PROCEDURAL  HISTORY

Mr. Hernandez was arrested on June 16, 2006.[4]  On October 25, 2006, he was indicted by a grand jury and charged with one count of aggravated rape of a child under the age of twelve in violation of La. R.S. 14:42 and with two counts of

---

[3]     Although C.H. is married and used a last name that did not start with the letter "H" at trial, she is consistently referred to in the briefing and earlier rulings as C.H.  To avoid confusion, she will be referred to in the same manner here.

[4]     Rec. Doc. 16-2 at 452.

molestation of a juvenile in violation of La. R.S. 14:81.2.[5]  Each of the counts concerned offensive activity with a different girl, all of whom were Mr. Hernandez's nieces.  The aggravated rape of P.B. allegedly occurred at some time between 1966 and 1972, when P.B. was between the ages of four and ten.  The molestation of C.H. was alleged to have occurred between 1989 and 1992, when C.H. was between the ages of nine and twelve.  The molestation of D.H. was alleged to have occurred between 1991 and 1992, when D.H. was between the ages of seven and eight.[6]  Mr. Hernandez responded to the indictment with a written plea of not guilty.[7]

The aggravated rape charge was severed from the other charges,[8] and Mr. Hernandez was tried only on the aggravated rape charge.  A jury trial was conducted in the 15th Judicial District Court, Lafayette Parish, Louisiana, on July 17, 2008 through July 19, 2008.[9]  The jury returned a unanimous verdict finding Mr.

---

[5]      Rec. Doc. 16-1 at 231.

[6]      Rec. Doc. 16-1 at 231.

[7]      Rec. Doc. 16-1 at 232.

[8]      Rec. Doc. 451-452, 473

[9]      Rec. Doc. 464 and following.

Hernandez guilty as charged.[10]  On July 31, 2008, Mr. Hernandez was sentenced to life imprisonment.[11]

Mr. Hernandez appealed his sentence.  Louisiana's Third Circuit Court of Appeals rendered a lengthy written opinion affirming his conviction and sentence.[12] Mr. Hernandez sought writs from the Louisiana Supreme Court, but his writ application was denied.[13] Mr. Hernandez applied to the United States Supreme Court for writs of certiorari.[14]  The United States Supreme Court denied his writ application.[15]

Mr. Hernandez then filed a motion for post-conviction relief with the trial court.[16]  The motion was denied.[17]  He sought relief from the Louisiana Third Circuit Court of Appeal, but that court denied his writ application.[18]  He then sought writs

---

[10]    Rec. Doc. 363.

[11]    Rec. Doc. 415-423.

[12]    Rec. Doc. 16-1 at 105-154.

[13]    Rec. Doc. 16-1 at 155.

[14]    Rec. Doc. 17-6 at 5-68.

[15]    Rec. Doc. 17-6 at 73.

[16]    Rec. Doc. 17-6 at 82-95.

[17]    Rec. Doc. 16-1 at 34-37.

[18]    Rec. Doc. 16-1 at 194.

from the Louisiana Supreme Court, which also denied his writ application.[19]  Mr. Hernandez then filed the instant application for a writ of *habeas corpus*.

<u>**ANALYSIS**</u>

Mr. Hernandez seeks to have his conviction overturned, articulating seven claims in his petition.  First, he argues that the delay in prosecuting him for this crime offends the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.  Second, he argues that Louisiana Code of Evidence Article 412.2, which permits evidence of similar crimes, wrongs, or acts in sex offense cases, is unconstitutional as applied and that the trial court erred in permitting such evidence to be presented at his trial.  Third, he argues that the trial court erred in imposing a life sentence.  Fourth, he argues that the evidence presented at trial was insufficient to sustain his conviction.  Fifth, he argues that he was denied the effective assistance of counsel at trial.  Sixth, he argues that he was denied the effective assistance of counsel on appeal.  Finally, he argues that he was denied protections afforded by the due process and equal protection clauses of the United States Constitution when he was sentenced in violation of constitutional *ex post facto* prohibitions.  All of these issues were either raised on appeal or raised in Mr.

---

[19]     Rec. Doc. 16-1 at 196.

Hernandez's application for post-conviction relief.  Therefore, all seven issues were addressed on the merits by Louisiana state courts.

## A.  TIMELINESS AND EXHAUSTION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to Mr. Hernandez's petition.  The threshold questions in habeas review under the AEDPA are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.[20] In this case, the state concedes that Mr. Hernandez's petition is timely and that he has exhausted his state-court remedies with regard to all seven claims asserted.  The state does not allege that Mr. Hernandez's claims are procedurally defaulted.  Therefore, the undersigned will review all of Mr. Hernandez's claims on the merits.

## B.  THE STANDARDS OF MERITS REVIEW.

The AEDPA provides standards of review for questions of fact, questions of law, and mixed questions of fact and law.  A state court's factual findings are presumed to be correct,[21] and a reviewing court must give deference to state court

---

[20]     *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997), citing 28 U.S.C. §§ 2254(b) and 2254(c).

[21]     28 U.S.C. § 2254(e)(1).

findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[22]  The statute codifies both the presumption of correctness that attaches to state court findings of fact and the clear and convincing evidence burden placed on a petitioner who attempts to overcome that presumption.[23]

A state court's determination of questions of law and mixed questions of law and fact must be given deference unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.[24]  A state court's decision is contrary to clearly established federal law if:  (1) the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.[25]  A state-court decision unreasonably applies federal law if it either:  (1) correctly identifies the governing rule but then applies it unreasonably to the facts;

---

[22]     28 U.S.C. § 2254(d)(2).

[23]     28 U.S.C. § 2254(e)(1).

[24]     28 U.S.C. § 2254(d)(1); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

[25]     *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010); *Hill v. Johnson*, 210 F.3d at 485.

or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.[26]  An unreasonable application of federal law is different from an incorrect application of federal law.  The court need not determine whether the state court's reasoning is sound; rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[27]  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[28]

In this case, Mr. Hernandez seeks relief from the March 2010 and November 2012 decisions of the Louisiana Supreme Court.  Both of these are one-word denials of Mr. Hernandez's writ applications.  When a reviewing federal court is "faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter"[29] to determine whether the adjudication was on the merits or rested on a procedural bar.[30]

---

[26]     *Penry v. Johnson*, 532 U.S. at 792; *Woodfox v. Cain*, 609 F.3d at 789.

[27]     *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[28]     *Price v. Vincent*, 538 U.S. 634, 641 (2003).

[29]     *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999), quoting *Lott v. Hargett*, 80 F.3d 161, 164 (5th Cir. 1996).

[30]     *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The last clear state-court decision with regard to Claim Numbers 1, 2, 3, and 4 was the Third Circuit's ruling of June 3, 2009, and the last clear state-court decision with regard to Claim Numbers 5, 6, and 7 was the trial court's judgment of April 5, 2011.  Both of those decisions articulated merits-based reasons for denying Mr. Hernandez's claims.  This Court must decide whether deference is owed to those decisions.

**CLAIM NO. 1.**        **WHETHER THE DELAY IN PROSECUTING THIS CRIME VIOLATES DUE PROCESS.**

Mr. Hernandez's first argument is that his constitutional due process protections were violated because of the lengthy delay between the date of the events forming the basis for the charge against him and the initiation of the criminal prosecution.  This claim was raised in his appeal and denied on the merits by Louisiana state courts.

"Before a putative defendant becomes an 'accused,' his primary protection against excessive government delay is the relevant statute of limitations."[31]  Mr. Hernandez was charged with aggravated rape, for which there is no statute of limitations under Louisiana law.[32]  In its ruling on Mr. Hernandez's appeal,

---

[31]        *Mack v. Cain*, No. 07-0006, 2008 WL 1901715, at *5 (W.D. La. Jan. 25, 2008), citing *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975).

[32]        Louisiana Code of Criminal Procedure Article 571 reads as follows:  "There is no time limitation upon the institution of prosecution for any crime for which the punishment may be

-11-

Louisiana's Third Circuit Court of Appeals exhaustively reviewed the history of the statute prohibiting aggravated rape and the cases interpreting it before concluding that "no prescriptive period applies to the aggravated rape charge at issue."[33]   Therefore, the applicable statute of limitations affords Mr. Hernandez no protection against the delay in prosecuting him for this crime.

When, as in this case, there is no statute of limitations governing the crime charged, the defendant's "only protection against pre-indictment delay is the due process clause of the Fifth Amendment."[34]   However, the due process clause "has a limited role to play in protecting against oppressive delay."[35]   A two-factor test is used to evaluate whether a valid claim for pre-indictment delay has been asserted under the due process provision of the Fifth Amendment.   First, the defendant must show that the prosecuting authority intentionally delayed the indictment with the intent to gain a tactical advantage; second, the defendant must prove actual prejudice

---

death or life imprisonment or for the crime of forcible rape."  It is undisputed that, at the time of the crime, the crime was punishable by death.  See *State v. Fraise*, 350 So.2d 154, 157 (La. 1977), explaining that the mandatory death penalty for this crime was declared unconstitutional in *Selman v. Louisiana*, 428 U.S. 906 (1976).  At the time of Mr. Hernandez's prosecution, the crime was punishable by life imprisonment.  La. R.S. 14:42(D).

[33]       Rec. Doc. 16-1 at 126.

[34]       *Beckwith v. Anderson*, 89 F. Supp. 2d 788, 805 (S.D. Miss. 2000).  See, also, *Mack v. Cain*, 2008 WL 1901715, at *5.

[35]       *United States v. Lovasco*, 431 U.S. 783, 789 (1977).

resulting from the delay.[36]   The defendant must bear the burden of proving both factors.[37]

With regard to the first prong of the test, there is no evidence in this case that the state delayed prosecuting Mr. Hernandez and Mr. Hernandez has made no such claim.  Although there was a forty-year delay between the acts forming the basis for the prosecution and his indictment, the delay was not caused by the prosecuting authorities.  To the contrary, Mr. Hernandez was promptly arrested, charged, and tried after P.B. came forward.  Therefore, Mr. Hernandez cannot establish the first part of the two-prong test.

With regard to the second prong of the pertinent test, it is well-settled that the mere passage of time is insufficient to prove prejudice to the defendant.[38]   To establish a due process claim based on pre-indictment delay, the defendant must prove actual prejudice; presumed prejudice is insufficient.[39]  "Vague assertions of lost

---

[36]     *United States v. Marion*, 404 U.S. 307, 325 (1971); *Woodfox v. Cain*, 609 F.3d at 804; *United States v. Crouch*, 84 F.3d 1497, 1523 (5th Cir. 1996) (en banc); *United States v. Beszborn*, 21 F.3d 62, 65–66 (5th Cir. 1994), *cert. denied*, 513 U.S. 934 (1994); *United States v. Willis*, 583 F.2d 203, 207 (5th Cir. 1978).

[37]     *United States v. Avants*, 367 F.3d 433, 441 (5th Cir. 2004).

[38]     *United States v. Butts*, 524 F.2d 975, 977 (5th Cir. 1975).

[39]     *United States v. Beszborn*, 21 F.3d at 66.

witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay."[40]

Mr. Hernandez argues that he was prejudiced by the forty-year delay in prosecution because the Code of Evidence article permitting other crimes evidence to be presented at his trial did not exist until recently; therefore, if he had been prosecuted earlier, other crimes evidence could not have been presented. He also suggests that P.B.'s memory has diminished over time, "as she is unable to distinguish between the alleged rape and touching."[41]  Finally, he argues that a forty-year delay in prosecution is inherently prejudicial and that the reasoning applied by the Supreme Court of Tennessee in *State of Tennessee v. Gray*, 917 S.W.2d 668 (Tenn. 1996), should be adopted so that his conviction may be overturned. Mr. Hernandez made these same arguments on appeal, and all of them were rejected, with the Third Circuit concluding that Mr. Hernandez "cannot prove he was prejudiced by the delay in this case."[42]

---

[40]     *United States v. Beszborn*, 21 F.3d at 66.

[41]     Rec. Doc. 1-2 at 9.

[42]     Rec. Doc. 16-1 at 131.

"A finding of prejudice involves a mixed question of law and fact."[43] Therefore, the state-court ruling should be overturned only if it was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  The undersigned finds, however, that the state-court rulings denying Mr. Hernandez's appeal were consistent with and reasonably applied federal law

The Third Circuit concluded, first, that "[a]lleging that other crimes evidence would not have been allowed pursuant to La. Code Evid. art. 412.2 is not sufficient, as the evidence may have been admissible under La. Code Evid. art. 404(B)."[44]  Mr. Hernandez has not persuaded the undersigned that this finding was erroneous.  He has not shown that it is contrary to clearly established federal law or that it involves an unreasonable application of such law.

Second, the Third Circuit found that although P.B. could not remember the dates on which specific acts occurred, "P.B. did not have problems recalling the inappropriate acts committed by Defendant."[45]   This fact-based conclusion is

---

[43]     *United States v. Beszborn*, 21 F.3d at 66.

[44]     Rec. Doc. 16-1 at 131.

[45]     Rec. Doc. 16-1 at 131.

supported by the evidence presented at trial.  Furthermore, it is not contrary to or an unreasonable application of federal law.

Finally, the Third Circuit rejected Mr. Hernandez's argument that the *Gray* case should control.  In the *Gray* case, a victim of sexual abuse waited forty-two years to file charges against the perpetrator.  The court found that the two-prong test explained above is "extremely one-sided" and "would force a result we would consider unconstitutional, unwarranted, and unfair."[46]  The court then "articulate[d] a standard by which to evaluate pre-accusatorial delay and hold that an untimely prosecution may be subject to dismissal upon Fifth and Fourteenth Amendment due process grounds and under Article I, § § 8 and 9, of the Tennessee Constitution even though in the interim the defendant was neither formally accused, restrained, nor incarcerated for the offense.  In determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused."[47]  In reaching that conclusion, the *Gray* court noted that its reasoning was "consistent with the apparent intent of the legislature because it has since amended the statute of limitations in child

---

[46]     *State of Tennessee v. Gray*, 917 S.W.2d at 673.

[47]     *State of Tennessee v. Gray*, 917 S.W.2d at 673.

sex abuse cases so that prosecution must be initiated within four years or no later than the date the child reaches majority, whichever occurs later."[48]

The Third Circuit found, however, that *Gray* "adopted a standard that has not been adopted in Louisiana."[49]  Furthermore, the Third Circuit pointed out that *Gray* is not consistent with the intent of the Louisiana legislature, since the "Louisiana legislature has chosen to provide more protection to the child victims of sex offenses."[50]  Under Louisiana law, there is no statute of limitations for the crime of aggravated rape, and the statute of limitations for several sex offenses against victims under seventeen years of age is thirty years, and the thirty-year time period does not begin to run until the victim reaches the age of eighteen.[51]  Had the thirty-year deadline applied to the crimes charged, the deadline would not yet have elapsed when charges were brought by P.B., C.H., and D.H. against Mr. Hernandez in 2006. Accordingly, the Third Circuit declined the invitation to find prejudice simply because of the lengthy delay between the time of the alleged acts and the filing of charges.

---

[48]    *State of Tennessee v. Gray*, 917 S.W.2d at 672 n. 3.

[49]    Rec. Doc. 16-1 at 130.

[50]    Rec. Doc. 16-1 at 130.

[51]    La. Code Crim. P. arts. 571, 571.1.

The Third Circuit's reasoning is consistent with Supreme Court precedent.  As the Fifth Circuit has explained:

> The Supreme Court was clear in its directive that, "There is no need to. . . guard against mere possibility that. . . delays will prejudice the defense. . . since statutes of limitation already perform that function." *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  The law is well settled—the Due Process Clause of the Fifth Amendment requires dismissal of an indictment if it is shown that the pre-indictment delay caused actual prejudice to the accused and that the Government intentionally delayed the indictment to gain a tactical advantage.[52]

Thus, the rule articulated by the United States Supreme Court is that the Fifth Amendment's due process clause is violated by pre-indictment delay only when the defendant proves both that the government caused the delay and the delay resulted in actual prejudice to the defendant.  Adopting the *Gray* analysis, as Mr. Hernandez suggests, would therefore be inconsistent with the Supreme Court's ruling in *Marion* and its progeny because it would equate a delay in prosecution with prejudice without requiring the defendant to prove that he actually was prejudiced by the delay.  For that reason, the Third Circuit was correct in rejecting his argument.  This Court should, consequently, defer to the Third Circuit's ruling.

---

[52]     *United States v. Beszborn*, 21 F.3d at 66.

-18-

Because Mr. Hernandez has not established either prong of the relevant two-part test, his first claim lacks merit, and the undersigned recommends that this claim be denied.

**CLAIM NO. 2.** **WHETHER LOUISIANA CODE OF EVIDENCE ARTICLE 412.2 IS UNCONSTITUTIONAL AND WHETHER THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF OTHER CRIMES EVIDENCE.**

Under the umbrella of a single claim number, Mr. Hernandez presents two distinct arguments. Mr. Hernandez argues, first, that La. C.E. art. 412.2 is unconstitutional. He raised this same issue on appeal. Louisiana's Third Circuit Court of Appeals found that the argument has no merit, and the Louisiana Supreme Court denied Mr. Hernandez's writ application. The state courts' resolution of this legal question must be given deference unless the Third Circuit's ruling was contrary to or involved an unreasonable application of clearly established federal law. The undersigned concludes that this is not the case.

Mr. Hernandez argues that Article 412.2 is unconstitutional because it violates that *ex post facto* provision of the United States Constitution. "As generally understood, a law that is ex post facto—literally, after the fact—is one that criminally punishes conduct that was lawful when it was done."[53] Mr. Hernandez's argument

---

[53] The Heritage Guide to the Constitution, http://www.heritage.org/constitution/#!/articles/1/essays/63/ex-post-facto, viewed on April 21, 2014.

-19-

seems to be that since Article 412.2 had not been enacted at the time that he committed the crime charged, the state should not be able to apply Article 412.2 in this case.  Consequently, he argues that the state should not have been permitted to present other crimes evidence at his trial.

This is a legal issue.[54]  Consequently, this Court must decide whether the state court's denial of this claim was unreasonable.

The Third Circuit found that Mr. Hernandez waived his argument regarding the constitutionality of Article 412.2, and that the trial court did not rule on the constitutionality of that article.[55]  This conclusion was based on Mr. Hernandez's counsel's statement, at the hearing on the other crimes evidence, that "if we have a full-blown hearing on the admissibility of the other-crime evidence sought by the State to be introduced and we can cross examine those witnesses, then probably 412.2 would be constitutional under those circumstances."[56]  A hearing was held, the witnesses were cross-examined, and the trial court decided that the other crimes evidence was admissible.

---

[54]    *Ortiz v. Quarterman*, 504 F.3d 492, 496 (5th Cir. 2007).

[55]    Rec. Doc. 16-1 at 137.

[56]    Rec. Doc. 16-1 at 398.

-20-

A state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues that are reviewable in a habeas corpus petition.  A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair.  In reviewing state court evidentiary rulings, the federal habeas court's role is limited to determining whether a trial judge's error is so extreme that it constituted a denial of fundamental fairness under the Due Process Clause.[57]

In this case, Mr. Hernandez has not established that he was denied a fair trial because other crimes evidence was admitted.  Therefore, the Third Circuit did not err in finding that Mr. Hernandez's constitutional challenge was waived.

Mr. Hernandez's second argument under Claim No. 2 is that the trial court erred in allowing the introduction of other crimes evidence.  This argument is, essentially, that the state trial court erred as a matter of state law.  This is not an argument that can be raised before this habeas court.  Federal habeas corpus relief is available only for violations of federal constitutional law,[58] and "federal habeas corpus relief does not lie for errors of state law."[59]  This Court's role is limited to

---

[57]     *Houser v. Mississippi*, No. 1:11CV32-B-S, 2014 WL 555349, at *4 (N.D. Miss. Feb. 12, 2014)(internal citations and quotation marks omitted).  See, also, *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

[58]     *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

[59]     *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

determining whether an alleged error by the trial court in making an evidentiary ruling was so extreme that it constituted a denial of fundamental fairness.[60]

In this case, the other crimes evidence was admitted only after an evidentiary hearing was held to "preview" the nature of the testimony, at which the witnesses presenting evidence of other crimes were cross-examined. The other crimes evidence was presented at trial only after the conclusion of P.B.'s testimony concerning what happened to her. Furthermore, an appropriate instruction was given to the jury, reading as follows:

> Evidence has been presented concerning other offenses which the defendant is alleged to have committed. The State was allowed to introduce this as evidence solely to establish motive, intent, knowledge, identity, and/or lustful disposition toward children. It is to be considered by you only for that purpose. It is not to be considered by you as proof of the character of the defendant in order to show that he acted in conformity therewith.
>
> Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense merely because of the evidence regarding other alleged offenses.[61]

Taking all of this into account, the undersigned concludes that the trial court's decision to allow the other crimes evidence did not deny Mr. Hernandez a

---

[60]     *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992); *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987).

[61]     Rec. Doc. 16-3 at 395.

fundamentally fair trial.  Therefore, the undersigned recommends deference to the state court ruling, which concluded that this claim lacks merit.

### CLAIM NO. 3.        WHETHER THE TRIAL COURT ERRED IN IMPOSING A LIFE SENTENCE.

Mr. Hernandez's next claim is that the trial court erred in imposing a life sentence because he should not have been ordered to serve more than twenty years at hard labor.  This claim was presented on appeal and rejected by Louisiana state courts.

An excessive sentence claim presents a question of law.[62]  Therefore, this court must defer to the state court on such a claim unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.[63]

Mr. Hernandez does not argue that his sentence is excessive under the Eighth Amendment of the United States Constitution or under any other constitutional provision.  Instead, he argues that his sentence is excessive under Louisiana law, noting changes in the prison term permitted for aggravated rape convictions over the years.  Such a claim is not cognizable in this proceeding.  Federal habeas corpus relief

---

[62]      *Pierre v. Leger*, 6:09-CV-1881, 2011 WL 2559879, *23 (W.D. La. May 16, 2011) report and recommendation adopted, CIV.A. 09-1881, 2011 WL 2560267 (W.D. La. June 28, 2011), aff'd, 495 F. App'x 403 (5th Cir. 2012); *Davis v. Cain*, 44 F.Supp.2d 792, 798 (E.D. La.1999).

[63]      28 U.S.C. § 2254(d)(1).

-23-

is available only for violations of federal constitutional law.[64]   Mr. Hernandez

asserted no such violation in connection with this claim.  Therefore, this claim has no

merit, and the undersigned recommends deferring to the state court decisions that

rejected it.

**CLAIM NO. 4.**       **WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO SUSTAIN A CONVICTION.**

Mr. Hernandez argues that the evidence presented at trial was insufficient to

sustain his conviction.  He raised this issue on appeal, and the Louisiana state courts

rejected his claim.

A criminal defendant has a federal due process right to be convicted only upon

evidence that is sufficient to prove beyond a reasonable doubt the existence of every

element of the crime.[65]   A challenge to the sufficiency of the evidence to support a

court's findings presents a mixed question of law and fact because it addresses the

application of law to facts.[66]   Therefore, when a defendant seeking federal habeas

relief contends that the evidence is insufficient to support a state-court conviction, the

relevant question is whether, after viewing the evidence in the light most favorable

---

[64]       *Narvaiz v. Johnson*, 134 F.3d at 695.

[65]       *Jackson v. Virginia*, 443 U.S. 307, 316 (1979).

[66]       *Harris v. Parker College of Chiropractic*, 286 F.3d 790, 794 (5th Cir. 2002), citing *Townsend v. Sain*, 372 U.S. 293, 310 n. 6 (1963).

-24-

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[67]   Federal habeas relief is appropriate only if, based upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.[68]

Louisiana's Third Circuit Court of Appeals engaged in an exhaustive review of the evidence presented at trial in an effort to determine whether there was sufficient evidence to establish Mr. Hernandez's guilt.  In particular, the court noted that Mr. Hernandez was charged with the crime of aggravated rape; that aggravated rape was defined at the time of the offense as rape of a female under the age of twelve; that P.B. testified that Mr. Hernandez partially inserted his penis into her vagina several times when she was approximately six years old to ten or eleven years old; that Louisiana law defines sexual penetration as any penetration however slight; that Louisiana law provides that a rape victim's testimony alone is sufficient to establish the fact of penetration; and that "the jury chose to believe the testimony of P.B."[69]  Consequently, the state courts reviewing this claim found that it lacks merit.

---

[67]     *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991).

[68]     *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996), citing *Jackson v. Virginia*, 443 U.S. at 322-326.

[69]     Rec. Doc. 16-1 at 117.

When a petitioner's insufficient evidence claim is based on the credibility of witnesses, a federal habeas court usually will not grant relief since the assessment of the credibility of witnesses is generally beyond the scope of review.[70]  This is such a case.  P.B.'s testimony was factually inconsistent with Mr. Hernandez's testimony, requiring that the jury decide which of them was telling the truth.  It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[71]  Therefore, the federal habeas court does not "focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."[72]  "All credibility choices and conflicting inferences are to be resolved in favor of the verdict,"[73] and the reviewing court may not substitute its interpretation of the evidence for that of the fact finder.[74]  Therefore, habeas relief on a claim of insufficient evidence is appropriate only when no rational trier of fact could have

---

[70]     *Schlup v. Delo*, 513 U.S. 298, 330 (1995).  See, also, *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.")

[71]     *Jackson v. Virginia*, 443 U.S. at 319.

[72]     *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

[73]     *Ramirez v. Dretke*, 398 F.3d at 695.

[74]     *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

found the petitioner guilty beyond a reasonable doubt based on the evidence adduced at trial.[75]

In this case, if P.B.'s testimony is believed, a rational trier of fact could find Mr. Hernandez guilty.  Accordingly, when the evidence that was presented at trial is viewed in the light most favorable to the prosecution, the inescapable conclusion is that the evidence was sufficient for a rational trier of fact to find Mr. Hernandez guilty beyond a reasonable doubt.  Therefore, he cannot show that the state-court decisions rejecting his claim were contrary to, or involved an unreasonable application of, clearly established federal law.  This claim lacks merit, and it is recommended that this Court defer to the state courts' decisions rejecting this claim.

**CLAIM NO. 5.        WHETHER TRIAL COUNSEL WAS INEFFECTIVE.**

Mr. Hernandez contends that his trial counsel was ineffective for (1) failing to properly argue the motion seeking to have La. C.E. art. 412.2 declared unconstitutional; (2) failing to properly cross examine witnesses at trial; (3) failing to impeach the trial testimony of C.H.; (4) failing to call Detective Scott Stevens to testify at trial; and (5) failing to articulate the discrepancies in the prosecution witnesses' trial testimony.[76]  These same claims were raised in Mr. Hernandez's

---

[75]     *West v. Johnson*, 92 F.3d at 1385.

[76]     Rec. Doc. 1-2 at 26.

application for post-conviction relief.[77]   The trial court found that the claims lack merit.[78]   Mr. Hernandez sought relief, but the Louisiana Third Circuit Court of Appeals denied writs, stating:   "The trial court did not err in denying Relator's application for post-conviction relief."[79]   The Louisiana Supreme Court then denied Mr. Hernandez's writ application with the single word "denied."[80]   "When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment."[81]   Accordingly, it must be presumed that the Third Circuit's decision and the Supreme Court's decision affirmed the trial court's reasoning with regard to this claim.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[82]   When a defendant collaterally attacks his conviction or sentence based on the effectiveness of his counsel, he has the burden of proving by

---

[77]   Rec. Doc. 17-6 at 85-86.

[78]   Rec. Doc. 16-1 at 34.

[79]   Rec. Doc. 16-1 at 194.

[80]   Rec. Doc. 16-1 at 196.

[81]   *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

[82]   *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

a preponderance of the evidence that his constitutional rights have been violated.[83]

The right to effective counsel "is denied when a defense attorney's performance falls

below an objective standard of reasonableness and thereby prejudices the defense."[84]

To prevail on a claim of ineffective assistance of counsel, Mr. Hernandez must

therefore demonstrate:  (1) that his attorney's representation was deficient because

it fell below an objective standard of reasonableness; and (2) that his attorney's

deficient performance prejudiced him.[85]  A failure to establish either prong is fatal to

the claim.[86]  The parts of the test need not be analyzed in any particular order, and

there is no need to consider the remaining part once an insufficient showing has been

made concerning the other.[87]

        In analyzing the professional competence part of the test, judicial scrutiny of

an attorney's performance must be "highly deferential," and the court must make

---

[83]        *James v. Cain*, 56 F.3d 662, 667 (5th  Cir. 1995); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).

[84]        *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

[85]        *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, e.g., *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[86]        *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 280 (5th Cir. 1997).

[87]        *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998), citing *Strickland v. Washington*, 466 U.S. at 697.

every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[88]   There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[89]

To satisfy the prejudice part of the test, Mr. Hernandez must demonstrate that his attorney's actions or inactions were "so serious as to render the proceedings unreliable and fundamentally unfair."[90]   "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense."[91]   Prejudice is demonstrated only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[92]   Thus, to establish prejudice due to his trial counsel's alleged ineffectiveness, Mr. Hernandez must show a

---

[88]     *Strickland v. Washington*, 466 U.S. at 689.

[89]     *Strickland v. Washington*, 466 U.S. at 689.

[90]     *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994), citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[91]     *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984).

[92]     *Strickland v. Washington*, 466 U.S. at 694.

reasonable probability that he would not have been convicted had his counsel done those things – or not done those things – that he now complains of.[93]

Additionally, this is a case in which the state courts have already ruled on Mr. Hernandez's ineffectiveness claim.  In such a situation,

> review of the state court's resolution of the ineffective assistance of counsel claim is doubly deferential, since the question is whether the state court application of the Strickland standard was unreasonable.  Importantly, this is different from asking whether defense counsel's performance fell below Strickland's standard, because the state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.  Consequently, even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  To obtain relief, a Petitioner must show that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[94]

No such error has been identified in this case.   The trial court (and presumptively the other state courts) rejected all of Mr. Hernandez's claims based on the alleged ineffectiveness of his trial counsel.  With regard to his claim that his

---

[93]     *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

[94]     *Marshall v. Cain*, 5:12-CV-2914, 2014 WL 782866, at *7 (W.D. La. Feb. 25, 2014), quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009), and *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (internal quotation marks and citations omitted).

counsel failed to properly argue the motion seeking to have La. C.E. art. 412.2

declared unconstitutional, the trial court said:

> To date, no court has found that Article 412.2 is unconstitutional or that it cannot be applied retroactively. Counsel filed a motion to declare Article 412.2 unconstitutional based on the need for notice and a hearing on admissibility. Upon receiving notice from the state and an admissibility hearing, counsel was satisfied and did not continue his motion. Further, appellate counsel raised the constitutionality of 412.2 as-applied to the Third Circuit and this was discussed thoroughly. The appellate court found no error with this court's admission of the other crimes evidence under Article 412.2 and additionally found that the evidence was properly admissible under Article 404(B). Petitioner cites State v. Kennedy. . . in support of his claim that this other crimes evidence should not have been admitted under Article 412.2  This court and the appellate court have acknowledged that Article 412.2 was a legislative response to Kennedy, specifically intended to allow the kind of evidence admitted in this case. Counsel did not err in his action regarding the challenge to Article 412.2.[95]

Mr. Hernandez has not persuaded the undersigned that the trial court's well-reasoned

analysis of this claim is contrary to, or involves an unreasonable application of,

clearly established federal law. Therefore, this Court should defer to the state court's

ruling on this claim.

---

[95]      Rec. Doc. 16-1 at 35 (internal citations omitted).

Mr. Hernandez next claims that his trial counsel was ineffective in four ways that all have to do with his attorney's trial tactics or strategy.  In evaluating a trial attorney's performance, courts are required to apply a strong presumption that counsel performed adequately and exercised reasonable professional judgment.[96] "Strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[97]  Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[98]  "At the same time, however, courts are not required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all."[99]

In this case, it is clear that the trial strategy of Mr. Hernandez's counsel was to show that he never had any type of inappropriate relationship with P.B. or with her

---

[96]      *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009); *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).

[97]      *St. Aubin v. Quarterman*, 470 F.3d 1096, 1102 (5th Cir. 2006), quoting *Strickland v. Washington*, 466 U.S. at 690.

[98]      *Richards v. Quarterman*, 566 F.3d at 564, quoting *Virgil v. Dretke*, 446 F.3d at 608.

[99]      *Richards v. Quarterman*, 566 F.3d at 564 (internal quotation marks omitted); *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999).

cousins who testified regarding alleged molestation and that all three of these women were seeking revenge against Mr. Hernandez for his close relationship with their grandmother and for the grandmother having disinherited P.B.'s mother at the urging of Mr. Hernandez's wife.

Mr. Hernandez complains that his counsel failed to properly cross examine witnesses at trial, particularly the victim.  But a review of the record demonstrates that the victim and other witnesses were extensively cross-examined by Mr. Hernandez's counsel.  Formulating the questions to ask a witness on cross-examination requires a series of strategic and tactical decisions.  Here, P.B. was extensively cross-examined about her memories of the events involving Mr. Hernandez, about the relationships of the members of the extended family, and about her mother being disinherited by her grandmother.  Furthermore, as the trial court noted, "[c]ross-examining a victim of child sexual abuse is a particularly sensitive matter and counsel's discretion in the manner in which he may choose to question such a witness is not a basis for a claim of ineffectiveness."[100]  The undersigned agrees.  Mr. Hernandez has not established that his counsel's cross-examination of the victims was deficient.

---

[100]     Rec. Doc. 16-1 at 36.

Mr. Hernandez next complains that his trial counsel was ineffective for failing to impeach the trial testimony of C.H.  But the defense put on a witness who testified that C.H. "has not been a very honest person. . . ."[101]  Thus, an effort was made to impeach C.H.'s testimony.  Consequently, there is no merit to this claim.

Mr. Hernandez next complains that his trial counsel was ineffective for failing to call Detective Scott Stevens to testify at trial.  Detective Stevens allegedly was "the only person to take the statements of the alleged victims in this case, and who was the only witness to testify before the grand jury in this case."[102]  Deciding what witnesses to call at trial involves issues of trial strategy and tactics.  According to the trial court's ruling, Detective Stevens was subpoenaed by the defense to testify at trial.[103]   Therefore, defense counsel must have made a strategic decision not to call him to testify.  Defense counsel certainly complained in closing arguments about Detective Stevens's absence from trial, and Mr. Hernandez suggests that Detective Stevens's testimony was needed to "help the jury make the proper determination about the truthfulness of P.B.'s testimony."[104]

---

[101]     Rec. Doc. 16-3 at 154-55.

[102]     Rec. Doc. 1-2 at 38.

[103]     Rec. Doc. 16-2 at 35.

[104]     Rec. Doc. 1-2 at 29.

"Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative.  Where the only evidence of a missing witnesses' [sic] testimony is from the defendant, this Court views claims of ineffective assistance with great caution."[105] This is the sort of case in which such caution should be exercised.  No one knows what Detective Stevens's testimony would have been had he been present at trial.  Mr. Hernandez speculates that his testimony would show P.B. to be untruthful, but there is nothing to back up that speculation.  Accordingly, there is no basis on which to conclude that defense counsel's failure to call Detective Stevens at trial rendered the trial unfair.  Therefore, this claim lacks merit.

Finally, Mr. Hernandez complains that his trial counsel failed to articulate certain discrepancies in the prosecution witnesses' trial testimony.  The undersigned interprets this to be a criticism of defense counsel's closing argument.  "[C]ounsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. . . .  Judicial review of a

---

[105]     *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001), quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986) (internal citations omitted).

defense attorney's summation is therefore highly deferential – and doubly deferential when it is conducted through the lens of federal habeas."[106]

The first alleged discrepancy is that the prosecutor's opening statement suggested that there would be evidence of Mr. Hernandez raping P.B. from 1966 to 1972, when the evidence actually showed that no such activity occurred before 1968. This "discrepancy" was cured the trial court's instruction that "statements made by the attorneys at any time during the trial are not evidence."[107]

The second "discrepancy" cited by Mr. Hernandez has to do with P.B.'s testimony concerning when, in relation to making statements to the detective, P.B. knew that C.H. had been molested by Mr. Hernandez.  Although Mr. Hernandez's counsel stated that he was confused by C.H.'s testimony, her testimony was actually consistent with that of P.B.  P.B. said that she saw C.H. with her new baby at the home of P.B.'s mother and knew from looking into her eyes that she had been molested.  C.H. testified, first, that P.B. had not come and visited with the baby. Counsel took this to mean that there had been no visit at all.  But C.H. later clarified that there had been a visit – but at the home of P.B.'s mother not at C.H.'s home.  She also explained that, during the visit at P.B.'s mother's home, she did not have a

---

[106]  *Yarborough v. Gentry*, 540 U.S. at 5–6.

[107]  Rec. Doc. 16-3 at 393.

conversation with P.B.  They saw each other, but did not speak.  "I saw her the day before she gave her statement. . . .  But I did not speak to her. . . .  At her mom's house."[108]  Even if C.H. had not clarified her testimony, the decision of what to include in a closing statement is a matter of trial strategy and tactics, which should not be second-guessed unless the error is so significant that the trial was rendered unfair.

Mr. Hernandez has not established that the questions asked by his counsel on cross-examination or his counsel's failure to call Detective Stevens to testify resulted in the trial being fundamentally unfair.  Similarly, Mr. Hernandez has not established that his counsel's failure to address the two alleged "discrepancies" in closing argument amounted to ineffective assistance of counsel.  For these reasons, Mr. Hernandez cannot establish that his trial counsel's performance was deficient or that it resulted in prejudice.

The trial court judge evaluated these same arguments in ruling on Mr. Hernandez's motion for post-conviction relief.  She found that Mr. Hernandez did not meet the burden of showing that the trial was unfair, and found that this claim lacked merit.  Mr. Hernandez has not persuaded the undersigned that the trial court's ruling was so lacking in justification that there was an error well understood and

---

[108]     Rec. Doc. 16-3 at 103.

comprehended in existing law beyond any possibility for fairminded disagreement. Therefore, this Court should defer to the trial court's ruling, which was left undisturbed by the Third Circuit and the Louisiana Supreme Court.  Claim No. 5 lacks merit, and the undersigned recommends that it be denied.

CLAIM NO. 6.        WHETHER APPELLATE COUNSEL WAS INEFFECTIVE.

Mr. Hernandez contends that he was denied the effective assistance of counsel on appeal, complaining that his appellate counsel failed to address the inclusion of "guilty of attempted simple rape" as a responsive verdict.  This issue was raised in Mr. Hernandez's application for post-conviction relief, and it was rejected by the state courts.  The trial court judgment, which was not disturbed by the Third Circuit or the Louisiana Supreme Court, reasoned as follows:

> Petitioner failed to show that appellate counsel was deficient.  Responsive verdicts are procedural.  Therefore, the responsive verdict applicable at the time of trial, not at the time of the offense, must be given.  At the time of the trial, attempted simple rape was a responsive verdict for aggravated rape.  Counsel rightly did not appeal this point. Therefore, petitioner's claim does not satisfy the first prong [competency] of the Strickland test.
>
> Petitioner's claim also fails the second prong [prejudice] of the Strickland test.  The jury did not convict petitioner under the responsive verdict of attempted simple rape.  The jury found that petitioner actually raped the young girl and convicted him of aggravated rape.  Because the alleged deficiency in counsel's performance had no

effect on the result of petitioner's appeal, petitioner's claim
of ineffective appellate counsel is without merit.[109]

The undersigned finds that the trial court's analysis and conclusion are not
unreasonable.  A criminal defendant is entitled to effective assistance of counsel at
every critical stage of the prosecution, through the conclusion of his direct appeal.[110]
The standard for ineffectiveness was correctly stated by the trial court.  Under the
familiar *Strickland v. Washington* analysis, Mr. Hernandez must prove both that his
appellate counsel was deficient and that he was prejudiced by those deficiencies.
With regard to this claim, however, neither prong has been satisfied.

To establish deficient performance, Mr. Hernandez must show by specific acts
and omissions that counsel's representation fell below an objective standard of
reasonableness,[111] but the Constitution does not require an appellate attorney to
advance every conceivable argument, regardless of merit.[112]  Instead, appellate
counsel is required to raise and brief only those issues that counsel believes, in the

---

[109]      Rec. Doc. 16-1 at 37.

[110]      See, e.g., *Mayo v. Cockrell*, 287 F.3d 336, 338 (5th Cir. 2002); *Evitts v. Lucey*, 469
U.S. 387, 3961 (1985).

[111]      *Strickland v. Washington*, 466 U.S. at 687-88.

[112]      *Evitts v. Lucey*, 469 U.S. at 394.

exercise of professional judgment, to have the best chance of success.[113]  Raising only those issues with plausible merit is emblematic of an able counsel's strategy.[114] Appellate counsel is ineffective only when an omitted argument had sufficient merit that the appellate attorney should have raised it on appeal.[115]  Because attempted simple rape was a proper responsive verdict at the time of trial, raising this issue on appeal was not necessary, and Mr. Hernandez's counsel was not ineffective for failing to raise this issue on appeal.  Additionally, since the jury did not find Mr. Hernandez guilty of attempted simple rape, he was not prejudiced by the inclusion of this responsive verdict on the verdict form.

Accordingly, the state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of *Strickland v. Washington*, and this claim lacks merit.  Therefore, the undersigned recommends that this claim be denied.

### CLAIM NO. 7.   WHETHER MR. HERNANDEZ WAS SENTENCED IN VIOLATION OF CONSTITUTIONAL *EX POST FACTO* PROHIBITIONS.

Mr. Hernandez's final argument is that the trial court's imposition of a life sentence violates the *ex post facto* prohibition of the United States Constitution.

---

[113]     See, e.g., *Willingham v. Cockrell*, 61 Fed. App'x , at *4 (5th Cir. 2003), citing *Jones v. Barnes*, 463 U.S. at 751-52; *United States v. Williamson*, 183 F.3d at 462.

[114]     *Wicker v. McCotter*, 783 F.2d 487, 497 (5th Cir. 1986).

[115]     *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).

Article 1, § 10 of the United States Constitution provides: "No State shall. . . pass any . . . ex post facto Law. . . ."  Laws that change the punishment for a crime so that a greater punishment is permissible at sentencing than at the time the crime was committed violate this prohibition.[116]  "To prevail on this sort of *ex post facto* claim, [a petitioner] must show both that the law he challenges operates retroactively (that it applies to conduct completed before its enactment) and that it raises the penalty from whatever the law provided when he acted."[117]  Mr. Hernandez was convicted of a crime that, at the time he committed it, was punishable with the death penalty or by life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[118]  The sentence that he actually received was no more harsh than the sentences permitted at the time that the crime was committed.  Accordingly, it was not unreasonable for the trial court to conclude that this claim has no merit.  The undersigned therefore recommends that this Court defer to the trial court's ruling

## CONCLUSION AND RECOMMENDATIONS

For the reasons stated above,

---

[116]    *Johnson v. United States*, 529 U.S. 694, 699 (2000).

[117]    *Johnson v. United States*, 529 U.S. at 699.

[118]    *State v. Johnson*, 429 So.2d 870, 871 (La. 1983).

**IT IS RECOMMENDED** that Mr. Hernandez's petition be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served, with a copy of any objections or response being provided to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals.  Within fourteen days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

Signed at Lafayette, Louisiana, on April 25, 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE